IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DORIAN O. CHAMBERS,            )
                               )
          Petitioner,          )
                               )
     v.                        )     1:20CV498
                               )
LEOPOLD S.P. RUSSELL,          )
                               )
          Respondent.          )
```

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is a Motion for Award of Expenses filed by Petitioner Dorian O. Chambers ("Petitioner"). (Doc. 30.) Petitioner seeks $28,997.53 in total expenses. (Id. at 3.) Respondent Leopold S.P. Russell ("Respondent") filed a response objecting to the motion. (Doc. 31.) Petitioner replied. (Doc. 32.) This motion is now ripe for consideration.

### I.   STATEMENT OF THE FACTS

Petitioner filed a Complaint seeking the return of her minor child, Z.R., to her custody in Jamaica. (Doc. 1.) Petitioner is the child's mother and Respondent is the child's father. On August 26, 2020, after holding a trial, this court issued a Memorandum Opinion and Order granting Petitioner's Verified Petition for Return of the Child Under the Convention

on the Civil Aspects of International Child Abduction, and ordered that the minor child, Z.R., be returned to Jamaica with Petitioner, his mother. (Mem. Op. & Order (Doc. 25).) Petitioner now seeks an award of both legal and non-legal fees related to the litigation. (Doc. 30.)

## II. ANALYSIS

There are two questions before the court: first, whether awarding attorney's fees is appropriate, and second, whether that amount should be reduced or awarded in full.

### A. Appropriateness of Awarding Attorney's Fees

This action was originally brought under both the International Child Abduction Remedies Act ("ICARA") and the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"). Petitioner seeks attorney's fees pursuant to ICARA. (Pet'r's Mot. for Award of Expenses ("Pet'r's Mot.") (Doc. 30) at 1.) Under ICARA,

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3). Under this statute, the burden is on Respondent to demonstrate that the award of attorney's fees is

-2-

"clearly inappropriate." See also Smedley v. Smedley, No. 7:14-CV-66-F, 2015 WL 5139286, at *1 (E.D.N.C. Sept. 1, 2015) ("Accordingly, under the plain language of the statute, this court has the duty to order the payment of necessary expenses and legal fees unless Respondent shows that an award would be clearly inappropriate."). The court is therefore required to award attorney's fees and expenses to the parent whose rights were violated unless Respondent demonstrates otherwise. See Dawson v. McPherson, No. 1:14CV225, 2014 WL 4748512, at *2 (M.D.N.C. Sept. 23, 2014); Trudrung v. Trudrung, No. 1:10CV73, 2010 WL 2867593 (M.D.N.C. July 21, 2010); Neves v. Neves, 637 F. Supp. 2d 322 (W.D.N.C. 2009); Friedrich v. Thompson, No. 1:99-CV-772, 1999 WL 33951234 (M.D.N.C. Nov. 26, 1999).

Two particular circumstances have been found to override that presumption and render such awards "clearly inappropriate." First, "a respondent's dire financial situation or inability to pay an award" may be a "factor" that would make that award inappropriate, particularly if it would impact the welfare of the child. Smedley v. Smedley, 2015 WL 5139286, at *2. The second such factor is if the respondent had a "reasonable good faith basis for thinking that retaining the children was in accordance with the law of the children's habitual residence." Id.; see also Cocom v. Timofeev, No. 2:18-cv-002247-DCN, 2019 WL

5964634, at *2 (D.S.C. Nov. 13, 2019) ("[T]wo considerations are often relied upon in determining whether to grant fees and costs under ICARA — 'whether a fee award would impose such a financial hardship that it would significantly impair the respondent's ability to care for the child . . . [and] whether a respondent had a good faith belief that her actions in removing or retaining a child were legal or justified.'" (quoting Rath v. Marcoski, 898 F.3d 1306, 1311 (11th Cir. 2018))).

Respondent cites both factors as reasons that Petitioner's request should be denied. First, Respondent argues that he is in dire financial need, and any award would impact Z.R. He claims that he "does not have the funds to pay the award of expenses due to his income being generally low and his recent unemployment due to the Covid-19 pandemic." (Resp't's Opp'n to Pet'r's Mot. for Award of Expenses ("Resp't's Resp.") (Doc. 31) at 6.) Other courts have found that fees can be inappropriate on this basis, given the potential impact on the minor child; however, typically excepted parties possess lesser financial means than Respondent. See, e.g., Cocom, 2019 WL 5964634, at *3 ("While Timofeev has a job, he only makes $45,260.80 per year, assuming he works every week of the year and not taking taxes into account. The amount of fees and costs sought by Cocom is over 1.5 times that amount."). For comparison, Respondent makes

-4-

slightly less than the respondent in Cocom, with a salary of $40,000 per year. However, the respondent in Cocom had no assets, while the Respondent here owns a home valued at $280,120. (Doc. 15-1 at 11.) Second, the maximum award sought here is only about sixty percent of Respondent's annual income. Finally, while the Respondent does have other ordinary expenses, he is not the party charged with the day-to-day responsibility of financially supporting the minor child at issue. This court will not find that Respondent's financial situation is so dire that he cannot pay any award under ICARA.

Second, Respondent argues he was acting in good faith when he removed Z.R. He claims he "believed himself to be exercising his rights under Jamaica law" and was simply fulfilling his custody of the child. (Resp't's Resp. (Doc. 31) at 4.) See Ozaltin v. Ozaltin, 708 F.3d 355, 375 (2d Cir. 2013) ("Although mistake of law is not a defense to the return action itself, it is a relevant equitable factor when considering whether a costs award is appropriate."). The court is not persuaded by this argument. Respondent attempts to argue again that he "continued to advise the Petitioner of his plans regarding their child" and "maintained contact" with Petitioner under the belief he was simply exercising his custody rights. (Resp't's Resp. (Doc. 31) at 4.) However, this court found in its Memorandum Opinion and

-5-

Case 1:20-cv-00498-WO-JLW   Document 34   Filed 04/22/21   Page 5 of 17

Order that "Petitioner and Respondent agreed Z.R. would remain in Jamaica until the visa issue was resolved," an agreement which Respondent violated. (Mem. Op. & Order (Doc. 25) at 16.) This court also credited Petitioner's testimony that Respondent substantially limited her communication with Z.R., while finding Respondent's testimony about his intentions "unreliable." (Id. at 33 n.17.) Respondent's re-interpretation of the facts, portraying himself as having consistent contact and abiding by their plans, is the basis of his argument that he acted in good faith. See Rath, 898 F.3d at 1312-13 ("[The respondent], who argued unsuccessfully on the merits that [the petitioner] had consented to her removal of [the child], has chosen to support her good faith claim by attempting to re-litigate the factual determinations already made and affirmed in this case."). Evidence of manipulation by Respondent and misleading of counsel further contribute to the fact that Respondent was not acting in good faith when he removed Z.R. or when he participated in this action. This court finds Respondent has not demonstrated the award of attorney's fees is clearly inappropriate.

## B. Reasonable Award

Having determined that Respondent will be required to cover expenses under ICARA, the court must next determine how much to award. The fees requested by Petitioner include both legal fees and non-legal expenses. The burden is on Petitioner to establish that fees and expenses are "necessary" as required by 22 U.S.C. 9007(b)(3). See Neves, 637 F. Supp. 2d at 344 ("Petitioner has failed to show that the other legal expenses that she incurred in Germany were necessary expenses related to this case[.]").

### 1. Reasonable Legal Fees

This court will apply the lodestar method to determine how much in attorney's fees is reasonable to award. Id. at 339 ("In determining the amount of reasonable attorney's fees to award under ICARA, federal courts typically apply the lodestar method."). The lodestar method involves multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended, after considering the Johnson factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and

-7-

>     length of the professional relationship between
>     attorney and client; and (12) attorneys' fees awards
>     in similar cases.

Grissom v. Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (quoting Spell v. McDaniel, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987)). These factors from Johnson "are to be considered as part of the Court's determination of the reasonable number of hours and the reasonable rate to be used in this case." Dawson, 2014 WL 4748512, at *3; see also Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978); Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (1974). Counsel is expected to exercise "billing judgment," and district courts should exclude hours that are "excessive, redundant, or otherwise unnecessary[.]" See Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).

An applicant for legal fees bears "the burden of establishing the reasonableness" of their attorney's rates and "is obliged to show that the requested hourly rates are consistent with 'the prevailing market rates in the relevant community for the type of work for which [s]he seeks an award.'" McAfee v. Boczar, 738 F.3d 81, 91 (4th Cir. 2013) (alteration in original) (citation omitted). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted

sits." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994) (citation omitted).

The primary attorney in this case billed at a rate of $350 per hour, compared to the alleged local average of $300 to $450 per hour. (Aff. of Afi S. Johnson-Parris ("Johnson-Parris Aff.") Doc. 30-1 ¶ 4.) Typically, when determining whether an attorney's rate is reasonable, courts look to affidavits submitted from "other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 245 (4th Cir. 2009) (citation omitted). Petitioner has the burden of providing affidavits attesting to the applicants' "own rates, experience, and skills" in addition to those of North Carolina lawyers "familiar both with the skills of some of the applicants and more generally with civil rights litigation" in the state is "sufficient evidence of the prevailing market rates[.]" Id. (citation omitted). Here, Petitioner's attorney provides an affidavit in which she states:

> I maintain a record of time charges for services rendered to each client. This time has been billed to Petitioner at the rate of $350 per hour for my time. The rates and charges are reasonable in comparison with the rates and charges of other lawyers with similar experience and skill practicing family law in Greensboro, North Carolina. It is customary for family law attorneys in this community with similar

-9-

> experience and skill as mine to charge between $300-$450 per hour.

(Johnson-Parris Aff. (Doc. 30-1) ¶ 4.) This affidavit as to rate is arguably insufficient. The Fourth Circuit has prescribed the determination of an appropriate rate by "evidence of fees paid to attorneys of comparable skill in similar circumstances." Rum Creek, 31 F.3d at 175. The analysis also incorporates consideration of the "rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from the client." Id. Counsel for Petitioner does not offer evidence of rates collected in the past. (See Johnson-Parris Aff. (Doc. 30-1).) Instead, counsel describes the rate, $350 per hour, "billed to Petitioner." (Id. ¶ 4.) Respondent objects generally to the attorney's fees, and specifically to certain expenses, but not to the rate. This court has reviewed the North Carolina cases cited by Petitioner and does not find them helpful in determining a reasonable rate here. (See Johnson-Parris Aff. (Doc. 30-1) ¶ 2.)

Nevertheless, in the absence of any specific objection from Respondent to the described range of $300 to $450 as "customary for family law attorneys in this community with similar experience and skill," (id. ¶ 4), this court will reduce the requested rate from $350 to $300. The affidavit does not sufficiently describe any objective manner to allow this court

-10-

to determine why counsel's rate should be at a point higher within the described range. Petitioner's attorney in the instant case spent 50.2 hours on the case, which at $300 per hour, totals $15,060.00. (Id. ¶ 6.)

While Respondent does not directly address the stated rate, Respondent argues that these fees are "excessively high in light of the complexity of the case and the streamlined nature of the litigation." (Resp't's Resp. (Doc. 31) at 10.) Respondent requests that the court "reduce the number of personal hours expended by lead counsel for Petitioner in its lodestar analysis by at least fifteen or twenty percent." (Id.) Respondent concludes that since Petitioner's lawyer had done six past Hague Convention cases, "it is clear that much of the written material and legal background information overlapped from those other cases, which should have reduced the workload for counsel." (Id.)

On the contrary, looking at the Johnson factors, this court notes that cases under the Hague Convention and ICARA are not "typical" legal actions and do raise novel questions that require specialized skills. Hague Convention cases are not run-of-the-mill legal actions and require specialized attention. See Neves, 637 F. Supp. 2d at 343 ("In reviewing the reasonableness of the hours expended, the Court is mindful that Hague

-11-

Convention cases often present novel and complex legal issues of child custody and international law that most attorneys do not routinely handle."); Flynn v. Borders, Civil Action No. 5:06-323-JMH, 2007 WL 862548, at *3 (E.D. Ky. Mar. 20, 2007) ("Petitions under the Hague Convention for the return of a wrongfully removed or retained child are fairly rare cases, and it is reasonable for an attorney to spend more time researching this area of the law than an issue of state or federal law that they frequently encounter."). Moreover, additional factors justify the hours spent on this case. The matter lacked a written custody agreement and incorporated issues of Jamaican law. Respondent also requested discovery. (Doc. 16.) Given all these factors, this court will accept Petitioner's attorney's hours expended as reasonable.

A paralegal and law student also assisted on the case at a rate of $150 per hour, for a total of 15.9 hours, totaling $2,385.00. (Johnson-Parris Aff. (Doc. 30-1) ¶¶ 5, 6.) Further associated legal fees, including outside research, filing fees, deposition services, and United States Marshals Service fees brought the requested total legal fees up to $27,785.27. (Id. ¶ 8.) This court is unable to determine a reasonable rate for paralegal and law student hours. Other than a general allegation that the rates are reasonable, no evidence has been presented to

-12-

Case 1:20-cv-00498-WO-JLW   Document 34   Filed 04/22/21   Page 12 of 17

support this conclusory estimate. This court is unable to make a finding that these rates are reasonable. There is only a limited description of the paralegal and law student's backgrounds and no evidence offered as a basis for the comparative appropriate rate. The legal research group's rate is acceptable given it applied to work that would otherwise have been done at the substantially higher rate of Petitioner's attorney. This court will therefore not award the fees charged by the paralegal and law student.

    **2.**    **Non-Legal Fees**

Petitioner also seeks an award covering her non-legal fees associated with the litigation, including foreign currency transaction fees, air fare between Jamaica and the UK, and a telephone call to court all totaling $2,786.18. (Affidavit of Dorian Chambers ("Chambers Aff.") (Doc. 30-2) ¶ 2.) In Dawson, another court in this district found that documented non-legal expenses can be awarded where they are reasonable. That court awarded, under ICARA, "(1) the cost of the round trip airline ticket for Petitioner; (2) the cost of the one-way airline tickets for the Children; (3) the cost of the change flight fee for Petitioner; (4) the cost of the private investigator hired to locate the Children in the United States; and (5) Petitioner

-13-

and the Children's lodging in the United States." Dawson, 2014 WL 4748512, at *8.

Here, Petitioner is seeking awards for similar non-legal fees that allegedly would not "have been incurred if not for the Respondent's wrongful removal of the minor child." (Doc. 32 at 5.) These non-legal fees include "the cost of air fare for travel to Jamaica from the UK, a telephone call to the court, and foreign currency purchase and transaction fees on [Petitioner's] credit cards for the payment of her attorneys' fees, total $2,786.18." (Pet'r's Mot. (Doc. 30) at 3.) These charges are similar to those awarded in Dawson, with the exception of the foreign transaction fees. However, the air fare presented by Petitioner is from Jamaica to the United Kingdom in mid-September. Petitioner references "travel that she required for the return of the minor child to Jamaica", (Doc. 32 at 6), and incorrectly alleges the air fare award requested is "air fare to travel to Jamaica from UK," (Chambers Aff. (Doc. 30-2) ¶ 2). Yet no return flight to Jamaica is included in the attached exhibits; only a flight from Jamaica to the UK with no further factual detail regarding when the minor child was picked up or how the child was returned. The burden is on Petitioner to demonstrate that the requested expenses were necessary. Due to the inconsistency and lack of clarity, this court will not award

-14-

the requested air fare. Similarly, Petitioner provides no factual information detailing what purchases incurred foreign transaction fees, or how they were necessary for the return of the minor child. For these reasons, Petitioner has not met her burden with regard to these expenses. The requested air fare and the foreign currency and transaction fees will not be awarded. Within the non-legal fees requested, only the phone call to court clearly qualifies as a "necessary expense[] incurred by or on behalf of the petitioner." 22 U.S.C. § 9007(b)(3).

### 3.  Reduction for Respondent's Financial Condition

Finally, Respondent again requests that the court reduce the financial award in spite of his responsibilities under ICARA; this time due to equitable considerations. This court may reduce the award if necessitated due to Respondent's financial condition. Other courts have reduced fees where a defendant is "without assets or income". Toufighjou v. Tritschler, Case No. 8:16-cv-1709-T-33-JSS, 2016 WL 6122465, at *4 (M.D. Fla. Sept. 30, 2016), report and recommendation adopted, Case No. 8:16-cv-1709-T-33-JSS, 2016 WL 6084097 (M.D. Fla. Oct. 18, 2016). Courts have awarded fees totaling nearly half of a party's assets even post-reduction. Hirts v. Hirts, 152 F. App'x 137, 139 (3d Cir. 2005). Respondent cites a variety of nonbinding authority easily distinguishable from the case at

-15-

hand; for example, in Mendoza, the award was reduced because the respondent had no assets and earned only $9 per hour. Mendoza v. Silva, 987 F. Supp. 2d 910, 917 (N.D. Iowa 2014). Respondent also cites Montero-Garcia, in which fees were not awarded because "respondent had absolutely no personal assets, all her income came from petitioner, and . . . she relied on public assistance as well as help from her church and sister to support her and her four children," while having "no prospects for gainful employment outside the home." Montero-Garcia v. Montero, No. 3:13-cv-00411-MOC, 2013 WL 6048992, at *2 (W.D.N.C. Nov. 14, 2013).

Here, Respondent makes $40,000 per year and owns a home with a $280,120 taxable value. (Doc. 15-1 at 11.) Respondent does not live with Z.R., nor does he pay formal child support to Petitioner. (Doc. 32 at 4.) While the fees may not be easy for Respondent to pay, this does not alter the court's analysis – requiring the full payment of the award will uphold "the legislative purpose of deterring future violations of the Hague Convention." Saldivar v. Rodela, 894 F. Supp. 2d 916, 943 (W.D. Tex. 2012). Given Respondent's continued income and his significant assets, this court does not agree that Respondent's fees should be reduced.

-16-

### III. CONCLUSION

This court will award fees under ICARA. However, the attorney's rate will be reduced to $300 per hour and the court will not award fees for work done by the paralegal or law student. The awarded legal fees will therefore include the $400.00 filing fee, $275.00 in United States Marshals Service fees, $753.74 for deposition and transcript services, $4,428.68 in legal research fees by the National Legal Research Group, and $15,060.00 for the attorney's 50.2 billed work hours. (See Johnson-Parris Aff. (Doc. 30-1) ¶¶ 6, 8.) This court will therefore award a total of $20,917.42 in legal expenses.

The court will decline to award fees for any of the requested non-legal expenses, except for the Petitioner's $38.54 phone call to court, which will be awarded. (Chambers Aff. (Doc. 30-2) ¶ 2.)

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Petitioner's Motion for Award of Expenses, (Doc. 30), is **GRANTED IN PART** and that Respondent shall pay the following amounts to Petitioner's counsel: (1) $20,917.42 in legal expenses, and (2) $38.54 in non-legal expenses.

This the 22nd day of April, 2021.

/s/ William L. Osteen, Jr.
United States District Judge

-17-